IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MAXWELL, on behalf of himself and all others similarly situated, | *Electronically Filed* |
| Plaintiff, | CASE NO. 23-1493 |
| v. | |
| POWER INNOVATIONS, INC., KIMBERLY KELLY, SCOTT KELLY, and ELEASHA PIONTEK, jointly and severally, | |
| Defendants. | |

**CLASS ACTION COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff James Maxwell, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and specifically, Justin M. Bahorich, Esquire, who files the within Class Action Complaint against Defendants Power Innovations, Inc., Kimberly Kelly, Scott Kelly, and Eleasha Piontek, jointly and severally, of which the following is a statement:

**PARTIES**

1. Plaintiff James Maxwell ("Plaintiff" or "Mr. Maxwell") is an adult individual who currently resides in Jeannette, Pennsylvania.

2. Defendant Power Innovations, Inc. ("Power Innovations") is a Pennsylvania corporation located at 2725 Walnut Street, McKeesport, Pennsylvania 15132.

3. Defendant Kimberly Kelly ("Ms. Kelly") is the Owner and President of Power Innovations and currently resides in Pennsylvania.

4. Defendant Scott Kelly ("Mr. Kelly") is the Vice President of Power Innovations and currently resides in Pennsylvania.

5. Defendant Eleasha Piontek ("Ms. Piontek") is the Office Manager and Payroll Specialist of Power Innovations and currently resides in Pennsylvania. (Power Innovations, Ms. Kelly, Mr. Kelly, and Eleasha Piontek are referred to collectively as "Defendants").

**JURSIDICTION AND VENUE**

6. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

8. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

**SUMMARY OF CLASS CLAIMS**

9. Plaintiff brings this action as a state-wide class action in part to recover unpaid wages, specifically those that were withheld to be deposited into a 401(k) retirement account, along with reasonable returns on the unpaid wages pursuant to the Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO Act"), 18 U.S.C. § 1343, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1), and Pennsylvania Common Law.

10. Plaintiff seeks, for himself and those similarly situated, compensatory damages in the form of back wages and emotional distress damages, liquidated damages, treble damages, punitive damages, reasonable attorneys' fees and costs of this action from Defendants.

11. Specifically, Plaintiff brings this action on behalf of the following similarly situated persons:

    a. **<u>WPCL, ERISA, Securities Exchange Act, RICO Act, and Pennsylvania Common Law Class</u>**

All former and current employees of Defendants, within the applicable statute of limitations, who worked within the United States and elected for withholdings from their earned wages that were to be deposited into a 401(k) retirement account for which the deposits were not timely made, pursuant to the WPCL.

All former and current employees of Defendants, within the applicable statute of limitations, who worked within the United States and its territories, to whom Defendants breached their fiduciary duty by making material misrepresentations, including those made on paystubs, specifically regarding withheld wages and payments into employees' 401(k) retirement accounts, pursuant to ERISA.

All former and current employees of Defendants, within the applicable statute of limitations, who worked within the United States and its territories, to whom Defendants made material misrepresentations regarding 401(k) account balances and/or deposits, including material misrepresentations made on employees' paystubs, pursuant to the Securities Exchange Act.

All former and current employees of Defendants, within the applicable statute of limitations, who worked within the United States and its territories, who suffered a financial loss, including lost wages, lost fringe benefits, and lost returns on investment as a result of material misrepresentations made by Defendants, pursuant to the RICO Act.

All former and current employees of Defendants who worked within the Commonwealth of Pennsylvania, within the applicable statute of limitations, who elected for withholdings from their earned wages that were to be deposited into a 401(k) retirement account for which the deposits were not timely made, pursuant to Pennsylvania common law.

    12.    Excluded from the classes are Defendants, including all past or present officers, any judge who presides over this action, and any attorneys who enter their appearance in this action.

13. Plaintiff reserves the right to expand, limit, modify, or amend the putative classes' definitions, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained during discovery.

14. Pursuant to Fed. R. Civ. P. 23(a)(1) and Pa. R. Civ. P. 1702(1), the members of the putative classes are so numerous that individual joinder of all class members is impracticable.

15. Pursuant to Fed. R. Civ. P. 23(a)(2) and Pa. R. Civ. P. 1702(2), this action involves questions of law and fact that are common to the class members and predominate over questions affecting only individual Class Members. Such common questions include, but are not limited to:

   a. Whether Defendants' pattern and practice of misrepresenting the status of withheld wages violated ERISA, the RICO ACT, the Securities Exchange Act, and Pennsylvania Common Law.

   b. Whether the WPCL allows Plaintiff and similarly situated employees to recover their lost wages.

16. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Upon information and belief, the members of the Class are so numerous that individual joinder of all class members is impractical because there are dozens of person to whom Defendants have improperly compensated by withholding wages and failing to deposit those wages into a 401(k) retirement account.

17. The identities of all class members are readily ascertainable from the records of Defendants.

18.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves questions of law and fact that are common to the class members and predominate over questions affecting only individual Class Members include, but are not limited to: (a) whether Defendants failed to properly allocate withheld wages into employees' 401(k) retirement accounts, and (b) whether Plaintiff and the Class are entitled to relief.

19.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured. Plaintiff and all members of Plaintiff's Class have claims arising out of Defendants' common uniform course of conduct complained of herein.

20.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intents to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the classes will not be harmed. Furthermore, the interests of the class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

21.     **Insufficiency of Separate Actions –** Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent

rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

22.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a singular court.

23.     **Ascertain ability –** all members of the proposed class are ascertainable. Defendants have access to Class Members' names and addresses affected by Defendants' wrongful conduct described herein.

## FACTUAL ALLEGATIONS

24.     Mr. Maxwell began working for Power Innovations on January 15, 2023 as an Electrician.

25.     Power Innovations assigned Mr. Maxwell to the "Mt. Lebanon Castle Gate" job.

26. Mr. Kelly provided that the rate of compensation would be $44.00 per hour.

27. Mr. Kelly stated that $16.00 per hour of Mr. Maxwell's wages would be withheld and deposited into a 401(k) account with the financial institution, Fringe Benefit Group Incorporated, on Mr. Maxwell's behalf.

28. Defendants issued paystubs to Mr. Maxwell which reflected that the withheld wages were deposited into a 401(k) account.

29. Defendants withheld approximately $16,320.00 for the pay periods between January 15, 2023 and July 13, 2023.

30. On or about July 2023, Mr. Maxwell contacted Fringe Benefit Group Incorporated to inquire about the balance of his 401(k) account.

31. Fringe Benefit Group informed Mr. Maxwell that his 401(k) account had a zero-dollar balance.

32. Defendants failed to deposit Mr. Maxwell's withheld wages into the 401(k) account.

33. Upon demanding repayment from Ms. Kelly and Mr. Kelly, Defendants issued Mr. Maxwell a check for $2,000 and informed him that they were unable to pay the remainder until they received payout from a client.

34. Defendants have failed to pay Mr. Maxwell the remainder of his withheld wages totaling approximately $14,320.00.

35. Defendants engaged in a pattern and practice of deducting wages from employees' paychecks on the false pretense that those wages would be distributed into a 401(k) account.

36. Instead, Defendants fraudulently retained employees' earned wages, failing to allocate the funds into 401(k) accounts as stated on employees' paystubs.

37. Defendants have failed to repay Class Members for the withheld wages that were illegally held from their 401(k) accounts.

38. As a direct and proximate result of the conduct alleged herein, Plaintiff and Class Members suffered financial harm including but not limited to lost wages and lost returns on their 401(k) account.

39. Further, the undersigned counsel contacted the Defendant to discuss the allegations. In response, Mr. Kelly admitted that the funds were withheld for all elgibile employees. Mr. Kelly, in an absurd attempt to justify himself, stated that Mr. Maxwell was simply "impatient" and that other employees were aware of his withholding and were "fine with it."

40. Thus, the imposition of punitive damages is appropriate.

## **PARTICIPATION THEORY**

41. The courts of this Commonwealth recognize the "participation theory," whereby, a corporate officer or representative who participates in wrongful, injury-producing conduct can be personally and individually liable while acting within the scope of their duty to the corporation. *See Loeffler v. McShane*, 539 A.2d 876 (Pa. Super. Ct. 1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1168 (Pa. Super. Ct. 1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa. Super. Ct. 1977).

42. "Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer." *Wicks v. Milzoco Builders, Inc.*,

470 A.2d 86, 90 (Pa. 1983). Liability will attach where the record establishes the corporate officer's participation in the tortious activity. *Id.* "Thus, in order for liability to attach the officer must actually participate in wrongful acts." *Kaites v. Commonwealth, Dep't of Envtl. Res.*, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987).

43. Further, the fact that a corporation may be vicariously or secondarily liable under the doctrine of respondeat superior does not relieve the individual of their responsibility. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) (citing *Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967)). "Such an action may exist even though the agent or officer derived no personal benefit, but acted on behalf, and in the name of, the corporation and the corporation alone was enriched by the act." *Shonberger v. Oswell,* 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *McDonald v. First Nat'l Bank*, 44 A.2d 265, 266 (Pa. 1945)).

44. Ms. Kelly is the Owner and President of Power Innovations and acted within her capacity as an officer of the company in the commission of an intentional tort. Thus, she may properly be held personally liable, jointly and severally, in this action.

45. Mr. Kelly is the Vice President of Power Innovations and acted within his capacity as an officer of the company in the commission of an intentional tort. Thus, he may properly be held personally liable, jointly and severally, in this action.

46. Ms. Piontek is the Office Manager and Payroll Specialist Power Innovations and acted within her capacity as an officer of the company in the commission of an intentional tort. Thus, she may properly be held personally liable, jointly and severally, in this action.

**COUNT I**
**NON-PAYMENT OF WAGES**
**IN VIOLATION OF THE WPCL**
*Plaintiff and Class Members v. All Defendants, jointly and severally*

47. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

48. The WPCL "provides a right of action" to any employee to whom "any type of wages" are payable, including earnings, fringe benefits, or wage supplements. *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 689 (Pa. Super. 2022).

49. Furthermore, the civil provisions of the WPCL are to be "liberally construed." *Id.*

50. Mr. Maxwell's and Class Members' payable fringe benefits were fraudulently retained by Defendants.

51. Mr. Maxwell is entitled to approximately $14,320 in fringe benefits as well as interest on that amount.

52. Class Members are likewise entitled to fringe benefits and interest.

53. Pursuant to the WPCL, Mr. Maxwell and Class Members are additionally entitled to attorneys' fees. *See Shaer v. Orthopaedic Surgeons of Cent. Pa., LTD.*, 938 A.2d 457, 465 (Pa. Super. 2007).

*54.* Pursuant to the WPCL, Mr. Maxwell and Class Members are additionally entitled to liquidated damages. *Id.*

55. Defendants' actions were intentional, willful, wanton, and done in reckless disregard for the rights of Plaintiff and Class Members.

56. As a direct and proximate result of the conduct alleged herein, Plaintiff and Class Members suffered financial harm including but not limited to lost wages and lost returns on his 401(k) account.

**COUNT II**
**SECURITIES FRAUD**
**IN VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**
**15 U.S.C. § 78a** *et seq.*
*Plaintiff and Class Members v. All Defendants, jointly and severally*

57.     Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

58.     The Securities Exchange Act of 1934, § 10(b) "prohibits the use of 'any manipulative or deceptive device or contrivance' in violation of regulations promulgated by the SEC." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023) (quoting 15 U.S.C. § 78j(b)).

59.     Under Rule 10b-5 of SEC regulations, "it is illegal to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *Id.* (citing 17 C.F.R. § 240.10b-5(b)) (internal quotations omitted).

60.     In conjunction with SEC regulation Rule 10b-5, § 10(b) of the Securities Exchange Act implies "a private cause of action for securities fraud." *Id.*

61.     To state a claim for securities fraud under the Securities Exchange Act, a plaintiff must allege, (1) "a misrepresentation or omission of material fact;" (2) "scienter;" (3) "a connection with the purchase or sale of a security;" (4) "reliance;" (5) "economic loss; and" (6) "loss causation." *Id.*

62.     Defendants misrepresented on Mr. Maxwell's and Class Members' pay stubs that they were investing their earned wages into a 401(k) retirement account.

63.     Defendants were aware that this was a misrepresentation. Defendants made this misrepresentation in bad faith.

11

64. The misrepresentation was made in connection with the purchase or sale of a security. Specifically, the misrepresentation was related to the deposit of Mr. Maxwell's and Class Members' wages into a 401(k) retirement investment account.

65. Mr. Maxwell and Class Members relied on Defendants' misrepresentation.

66. Mr. Maxwell's and Class Members' reliance on Defendants' misrepresentation resulted in economic loss.

67. Mr. Maxwell's and Class Members' economic loss were a direct result of Defendants' misrepresentations.

68. Defendants' actions were intentional, willful, wanton, and done in reckless disregard for the rights of Plaintiff and Class members.

69. As a direct and proximate result of the conduct alleged herein, Plaintiff and Class Members are entitled to compensatory damages.

**COUNT III**
**WIRE FRAUD**
**IN VIOLATION OF THE RICO ACT**
**18 U.S.C. § 1343**
**(Plead in the Alternative to COUNT II)**
*Plaintiff and Class Members v. All Defendants, jointly and severally*

70. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

71. "The RICO statute authorizes civil suits by any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991) (internal citations omitted).

72. Specifically, the RICO Act provides that:

> It shall be unlawful or any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962 (c).

73. In order to plead a violation of the RICO Act, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (citing 473 U.S. 479, 496 (1985)).

74. "A pattern of racketeering activity requires at least two predicate acts of racketeering." *Id.* (citing 18 U.S.C. § 1961(5)). The predicate acts include wire fraud under 18 U.S.C. § 1343. *Id.*

75. The RICO Act defines wire fraud as the following conduct:

> having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

18 U.S.C. § 1343.

76. Defendants engaged in conduct of an enterprise when they withheld wages and issued paychecks with the accompanying pay stubs through their roles as officers of Power Innovations.

77. Defendants engaged in this activity every two weeks, at every pay issuance, establishing a pattern of conduct.

78. Defendants devised a scheme to defraud Mr. Maxwell and Class Members by falsely representing pay withholdings and retaining employees' earned wages instead of depositing those wages in 401(k) retirement accounts.

79. Defendants exercised this fraud through electronic means, including but not limited to, its online payroll system, its pay stub portal, and electronic wire transfers in the form of direct deposits.

80. Thus, Defendants engaged in a pattern of racketeering activity.

81. Defendants' actions were intentional, willful, wanton, and done in reckless disregard for the rights of Plaintiff.

82. As a direct and proximate result of the conduct alleged herein, Plaintiff and those similarly situated are entitled to compensatory damages and treble damages.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
## IN VIOLATION OF ERISA
## 29 U.S.C. § 1104(a)(1)
*Plaintiff and Class Members v. All Defendants, jointly and severally*

83. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set at length herein.

84. 29 U.S.C. § 1104(a)(1) provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of: . . . providing benefits to participants" and "defraying reasonable expenses of administering the plan." Furthermore, a fiduciary must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.*

85.     The fiduciary duties listed by ERISA is not exhaustive. *Unisys Corp. Retiree Med. Benefits Erisa Litig. v. Unisys Corp.*, 579 F.3d 220, 227 (3d Cir. 2009). In drafting ERISA, Congress relied upon the common law of trusts to define the scope of authority and responsibility for fiduciaries. *Id.* at 227-28.

86.     "Accordingly, an ERISA fiduciary may not, in the performance of its duties, materially mislead those to whom the duties of loyalty and prudence are owed." *Id.* at 228 (internal citations omitted).

*87.*    To establish a breach of fiduciary duty under ERISA, a plaintiff must allege: (1) the defendant was acting in a fiduciary capacity; (2) the defendant made affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries; (3) the misrepresentation or inadequate disclosure was material; and (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure. *Id.*

88.     Pertaining to the first element, ERISA defines fiduciary in "functional terms of control and authority over the plan." *Id.* Thus, fiduciary duties as defined by ERISA attach to persons performing particular functions. *Id.*

89.     Defendants were acting in a fiduciary capacity under ERISA as they were responsible for withholding wages from Mr. Maxwell's and Class Members' pay and depositing those funds into their 401(k) retirement accounts.

90.     Defendants made affirmative misrepresentations on every paystub Mr. Maxwell received from January 2023 until July 2023. Defendants likewise made such misrepresentations on the paystubs of Class Members.

91. Defendants misrepresentations were material as the misrepresentations encompassed nearly every aspect Defendants' fiduciary duty to Mr. Maxwell and Class Members.

92. Mr. Maxwell and Class Members detrimentally relied upon Defendants' misrepresentations that withholdings from their pay was being deposited into 401(k) retirement accounts.

93. As a direct and proximate result of the conduct alleged herein, Plaintiff and Class Members suffered financial harm including but not limited to lost wages and lost returns on their 401(k) retirement accounts.

94. Defendants' actions were intentional, willful, wanton, and done in reckless disregard for the rights of Plaintiff and Class Members.

## COUNT V
## FRAUD
## IN VIOLATION OF PENNSYLVANIA COMMON LAW
*Plaintiff and Class Members v. All Defendants, jointly and severally*

95. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

96. In order to adequately state a claim for fraud under Pennsylvania common law, a plaintiff must allege: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance on the misrepresentation; which (5) proximately caused damage. *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 324 (Pa. Super 2015).

97. Throughout Mr. Maxwell's employment, Defendants made various misrepresentations and omissions of material fact, including but not limited to, representing that Mr. Maxwell would be compensated at $44.00 per hour; representing that $16.00 per hour of Mr.

Maxwell's wages would be withheld and deposited into his 401(k) account; providing paystubs which reflected the 401(k) withholdings; and failing to inform Mr. Maxwell that he did not have a 401(k) account during his employment.

98. Defendants made similar misrepresentations to Class Members by stating that the withholdings from their wages were being deposited into their 401(k) retirement accounts, when in reality, they were being fraudulently retained by Defendants.

99. Defendants knowingly made these misrepresentations and did so in bad faith.

100. Upon information and belief, Defendants overstated the hourly wage offered in order to attract potential employees.

101. Defendants' misrepresentations and omissions induced Mr. Maxwell to commence employment and work for a 6-month period at a rate of pay less than what was agreed upon.

102. Defendants' misrepresentations and omissions additionally induced Class Members to work for a rate of pay that was less than what was agreed upon.

103. Mr. Maxwell justifiably relied on Defendants' misrepresentations as his pay stubs reflected that a portion of his wage was withheld for deposit into the 401(k) account.

104. Class Members additionally justifiably relied on Defendants' misrepresentations as their paystubs reflected that a portion of their wages were withheld for deposit into the 401(k) account.

105. Upon information and belief, Defendants withheld wages from Mr. Maxwell and Class Members for business and personal use.

106. As a direct and proximate result of the conduct alleged herein, Plaintiff and Class Members suffered financial harm including but not limited to lost wages and lost returns on their 401(k) account.

107. Defendants' actions were intentional, willful, wanton, and done in reckless disregard for the rights of Plaintiff and Class Members. Defendants' actions warrant the imposition of punitive damages.

### COUNT VI
### BREACH OF CONTRACT
### IN VIOLATION OF PENNSYLVANIA COMMON LAW
*Plaintiff and Class Members v. All Defendants, jointly and severally*

108. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

109. To adequately state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract with essential terms; (2) a breach of duty imposed by that contract; and (3) damages resulting from the breach. *Harley v. Healthspark Found.*, 265 A.3d 674, 685 (Pa. Super 2021).

110. A valid, binding contract existed between the parties, the terms of that contract were as follows: Mr. Maxwell performed the duties of his job and in exchange, Defendants paid Plaintiff's wages and fringe benefits.

111. Likewise, Class Members performed the duties of their jobs and in exchange, Defendants paid Class Members' wages and fringe benefits.

112. Mr. Maxwell performed all of his obligations under the parties' implied contract.

113. Upon knowledge and belief, Class Members performed all of their obligations under the parties' implied contracts.

114. Defendants failed to deposit Mr. Maxwell's and Class Members' earnings into a 401(k) account in breach of the parties' implied contract.

115. Mr. Maxwell's and Class Members' damages resulted from Defendants' breach.

116. Defendant's actions were intentional, willful, wanton, and done in reckless disregard for the rights of Plaintiff and Class Members. Defendants' actions warrant the imposition of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Maxwell, on his own behalf and on behalf of the Class Members, respectfully requests this Honorable Court to enter judgment in favor of Plaintiff and similarly situated individuals and against Defendants as follows:

a. For an Order conditionally certifying the putative Class under Rule 23(c) of the Federal Rules of Civil Procedure;

b. For an Order appointing Plaintiff as Class Representative to represent the interests of the Class;

c. For an Order appointing Plaintiff's counsel as Class Counsel;

d. For an Order awarding compensatory damages;

e. For an Order awarding punitive damages;

f. For an Order awarding liquidated damages;

g. For an Order awarding treble damages;

h. For an Order awarding prejudgment interest;

i. For an Order awarding attorneys' fees and costs;

j. For an Order granting such other and further relief as may be necessary and appropriate in equity; and

k.  Such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

                                                          **J.P. WARD AND ASSOCIATES, LLC**

Date: August 18, 2023                                By: _____
                                                                 Justin M. Bahorich (Pa. I.D. No. 329207)
                                                                  Joshua P. Ward (Pa. I.D. No. 320347)

                                                                  J.P. Ward and Associates, LLC
                                                                  The Rubicon Building
                                                                  201 South Highland Avenue
                                                                  Suite 201
                                                                  Pittsburgh, PA 15206

                                                                  *Counsel for Plaintiff and Class Members*