IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES MAXWELL, on behalf of himself and all others similarly situated, | : : : |
| *Plaintiff*, | : Case No.: 2:23-cv-01493-MRH : |
| v. | : : |
| POWER INNOVATIONS, INC.; KIMBERLY KELLY and SCOTT KELLY, *jointly and severally*, | : : : |
| *Defendants*. | : : |

**PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT**

AND NOW come Plaintiffs, James Maxwell and Christopher Pendel (jointly "Plaintiffs"), by and through the undersigned counsel, J.P Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who respectfully moves this Court to enforce the parties' settlement agreement and in support thereof states as follows:

I. **PROCEDURAL HISTORY**

A. **Case Initiation and Early Proceedings (Aug. 2023 – Feb. 2024)**

1. On August 18, 2023, Plaintiff James Maxwell ("Plaintiff Maxwell") filed this putative class action alleging violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"), the Employee Retirement Income Security Act ("ERISA"), the Securities Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), against Defendants Power Innovations, Inc., Kimberly Kelly, Scott Kelly, and Eleasha Piontek, jointly and severally. *See* ECF 1.

1

2. Following the Initial Case Management Conference held on February 7, 2024, this Honorable Court entered an Order on February 8, 2024, holding all filing deadlines in abeyance and tolling the statutes of limitations pending further discussions amongst the parties. *See* ECF 34.

3. On March 22, 2024, the parties held an in-person meet and confer, during which undersigned counsel advised Defendants that he had been retained by an additional former employee and putative class member, Christopher Pendel ("Plaintiff Pendel").

4. On June 20, 2024, the parties convened in person to discuss the potential for resolution. During that meeting, seven (7) Plaintiffs reached individual settlement agreements with Defendants. Counsel for Power Innovations, Kimberly Kelly, and Scott Kelly, Brendan Petrick, Esq. ("Attorney Petrick"), also confirmed his authority to negotiate the individual settlements of Plaintiffs Maxwell and Pendel.

5. On August 8, 2024, undersigned counsel transmitted an individual demand on behalf of Plaintiff Maxwell. Samuel Dalfonso, Esq. ("Attorney Dalfonso"), counsel for former Defendant Eleasha Piontek ("Ms. Piontek"), advised that settlement discussions could not proceed until Ms. Piontek was dismissed as a party in this Action.

6. On September 11, 2024, the undersigned deposed Ms. Piontek to evaluate her testimony and assess her role in the underlying events. Plaintiffs subsequently stipulated her dismissal on September 17, which the Court approved the following day. *See* ECF 46.

7. On December 11, 2024, Plaintiffs noticed the depositions of individual Defendants Kimberly and Scott Kelly. Between December 2024 and February 2025, the parties engaged in ongoing settlement discussions focused on resolving Plaintiffs' individual claims.

**B. Settlement Negotiations and Drafting of Agreements (Feb. 2025 – Mar. 2025)**

8. On February 13, 2025, the parties reached an agreement in principle to resolve the matter in full. At Plaintiff's request, Attorney Petrick prepared a draft settlement agreement and general release for each Plaintiff and circulated the same on February 16, 2024.

9. Revised drafts were circulated on February 19, 2024, incorporating the agreed-upon confession of judgement language and a corrected liquidated damages clause.

10. By March 7, 2025, the substantive terms of the settlement had been finalized. Undersigned counsel confirmed that the language was acceptable, subject only to a minor calculation error, which Attorney Petrick acknowledged and agreed to revise on March 12, 2025.

11. On March 24, 2025, Attorney Petrick's office transmitted the corrected settlement agreements, indicating that Defendants would execute them later that same week. On March 26, 2024, undersigned counsel confirmed the corrected calculations and specified for all checks to be sent to the office of J.P Ward & Associates, LLC. Attorney Petrick agreed.

12. Between March 27 and March 28, 2025, Plaintiffs executed the finalized agreements ("Maxwell Agreement" and "Pendel Agreement"). On March 28, 2024, CFO Jack Hodil ("Mr. Hodil") transmitted the fully executed agreements to Attorney Petrick for Defendants' execution and payment. *See Ex. A – REDACTED Confidential Settlement Agreement – Maxwell; Ex. B – REDACTED Confidential Settlement Agreement – Pendel; and Ex. C, March 28, 2025, email transmitting executed agreements*[1].

**C. Defendants' Failure to Perform and Continued Noncompliance (Apr. 2025 – Aug. 2025)**

13. On April 11, 2025, Attorney Petrick requested electronic payment information. On April 14, 2025, undersigned's staff provided complete wiring instructions.

---

[1] Redacted versions of the Maxwell and Pendel Settlement Agreements are filed as Exhibits A and B, respectively, omitting only the confidential settlement consideration and personal identifying information.

14. On May 7, 2025, undersigned counsel contacted Attorney Petrick to inquire about the status of payment and execution. No response was received.

15. After no acknowledgement, undersigned counsel followed up several times throughout May and June 2025 by email and telephone, including on May 22 and June 10, seeking confirmation that payment had been initiated and Defendants intended to comply. None of these communications elicited a reply.

16. On June 25, 2025, Plaintiffs issued a formal written notice to Defendants of their breach and invoked the notice provision of the confession of judgement clause, providing thirty (30) days to cure. *See Ex. D, Notice of Intent to Enter Confession of Judgement, and Ex. E, email transmittance of the same.*

17. The following day, June 26, 2025, Attorney Petrick confirmed receipt of the notice and stated that he had forwarded it to Defendant Scott Kelly "with appropriate instructions and the consequences of not following them." No payment or further communication followed. *See Ex. E*.

18. When the thirty-day cure period expired without compliance, undersigned counsel again contacted Attorney Petrick on July 30, 2025, requesting immediate confirmation that payment had been made or that Defendants intended to honor their contractual obligations. Attorney Petrick failed to respond.

19. On August 18, 2025, undersigned counsel sent another email requesting both a copy of the fully executed settlement agreements and an update as to payment status.

20. Defendant responded on the same day with the fully executed Settlement Agreements.

21. To date, Defendants have failed to remit any and all payments owed to Plaintiffs.

### D. Summary of Plaintiffs' Efforts to Secure Compliance

22.     In sum, Plaintiffs have fully performed their obligations under the settlement agreements, provided written notice for default, and afforded Defendants multiple opportunities to cure. Despite repeated communications and counsel's acknowledgement of receipt, Defendants have failed to execute or tender payment, leaving judicial intervention as the only remaining means to effectuate the parties' binding agreements.

23.     At the time of this filing, more than two hundred (200) days have passed since Plaintiffs executed and transmitted the settlement agreements.

24.     Defendants have failed to execute the agreements, issue any payments, or otherwise comply with the terms of settlement.

25.     Undersigned counsel has conferred with Attorney Petrick in good faith regarding Defendants' position on this Motion.

26.     Attorney Petrick represented that he intends to file a Motion to Withdraw if Plaintiff files the instant Motion.

27.     In sum, Defendants contest the filing of the instant Motion.

## I.     LEGAL ARGUMENT

### A. Enforceability of Settlement Agreements

Under Pennsylvania and federal law, settlement agreements are contracts governed by ordinary principles of contract law. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999)[2]. A settlement is binding once the parties reach a meeting of the minds on all material terms—even if

---

[2] *See also McDonnell v. Ford Motor Co.*, 434 Pa. Super. 439, 643 A.2d 1102, 1105 (1994) (confirming that a party may not repudiate a settlement once essential terms are agreed upon), *accord Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991).

they anticipate memorializing the agreement later in writing. *Id.* at 536–37; *Field v. Golden Triangle Broad., Inc.*, 451 Pa. 410, 418, 305 A.2d 689, 693 (1973).

The Third Circuit has consistently applied this rule, holding that once parties agree to essential terms, the agreement is enforceable as a matter of law. *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). A district court may summarily enforce a settlement where no material facts are in dispute as to its existence or validity, and a hearing is required only when genuine factual disputes exist concerning assent or scope. *Id.* at 1032–33.

As reaffirmed in *McCune v. First Judicial District of Pennsylvania*, "[a]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in the absence of a writing." 99 F. Supp. 2d 565, 567 (E.D. Pa. 2000) (quoting *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970)). Once a party assents to settlement terms, a later "change of heart" is immaterial. *Gross v. Penn Mut. Life Ins. Co.*, 396 F. Supp. 373, 375 (E.D. Pa. 1975). Nor may a party repudiate the bargain after accepting its benefits. *McDonnell v. Ford Motor Co.*, 643 A.2d 1102, 1105 (Pa. Super. Ct. 1994).

The principle underlying *Tiernan* and *McCune* is that a district court's authority to enforce settlement agreements stems from its inherent power to manage the proceedings before it. *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993). As the Third Circuit explained in *Tiernan*, summary enforcement is appropriate where the material terms are undisputed, because "both deprive a party of his right to be heard in litigation," only after it is clear there are no material facts in issue. 923 F.2d at 1032–33.

Here, that standard is easily satisfied. Between February and March 2025, the parties negotiated and finalized all material terms of settlement, including the settlement amount, confession-of-judgment language, and confidentiality provisions. On March 28, 2025, Plaintiffs

executed and transmitted the finalized agreements and W-9 forms. Attorney Petrick confirmed that Defendants would execute and fund payment later that week. These exchanges establish a meeting of the minds and constitute enforceable contracts under *Mazzella* and *Tiernan*.

Subsequent communications reinforce the parties' assent. Between April and June 2025, Defendants' counsel acknowledged receipt of the executed agreements, requested payment instructions, and on June 26 confirmed he had forwarded notice of default to Defendant Scott Kelly "with appropriate instructions and the consequences of not following them." Defendants' continued silence thereafter constitutes breach--not lack of assent. Under *Tiernan*, *McCune*, and *McDonnell*, the settlements are valid and enforceable as a matter of law.

### B. Defendants' Continued Nonperformance Constitutes a Material Breach

Plaintiffs have fully performed their obligations under the settlements. By March 28, 2025, Plaintiffs executed their respective agreements, provided completed W-9 forms, and complied with all confidentiality and release requirements. In contrast, Defendants have failed to (1) execute their counterparts, (2) remit any portion of the settlement proceeds, and (3) respond to repeated written follow-ups and formal notice of default issued on June 25, 2025.

Defendants' ongoing failure to perform strikes at the very heart of the agreement constitutes a material breach. *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. Ct. 2003). More than two hundred (200) days have now passed since Plaintiffs tendered their executed agreements and fulfilled all obligations, yet Defendants have not cured their default despite ample opportunity and multiple express warnings.

Such conduct renders the settlements incapable of performance absent judicial intervention. Pursuant to the clear terms of the agreements, Defendants' uncured default triggers

the confession-of-judgment provisions and entitles Plaintiffs to entry of judgment for the full unpaid balances, together with all reasonable attorneys' fees and costs of collection.

### C. Attorneys' Fees and Costs

Both agreements entitle the prevailing party to "all reasonable attorneys' fees and costs of collection incurred in enforcing this Agreement. *Ex. A § 2(a)(ii) (providing for entry of judgment for the unpaid balance "together with all costs of collection, including attorneys' fees").* Defendants' breach necessitated extensive follow-up and this enforcement motion, squarely invoking those provisions.

### D. Judicial Authority to Enforce Settlement Terms

Federal courts retain ancillary jurisdiction to enforce settlement agreements when the underlying action remains within the court's purview or when the court expressly retains jurisdiction to enforce the parties' settlement. *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993). This authority includes the power to compel compliance, enter judgment consistent with the settlement, and award fees and costs incurred to secure performance. *See Shmuely v. Transdermal Specialties, Inc.*, No. 17-1684, 2019 WL 3002942, at *1–2, *4 (E.D. Pa. July 10, 2019) (granting motion to enforce settlement, directing payment of the settlement amount with prejudgment interest, awarding plaintiffs' attorneys' fees for enforcement, and imposing coercive sanctions for continued noncompliance).

A district court's enforcement authority extends to the full range of remedies contemplated by the parties' agreement, including entry of judgment by confession where properly authorized under Pennsylvania law. *Tiernan v. Devoe*, 923 F.2d 1024, 1031–33 (3d Cir. 1991) (recognizing summary enforcement where no material facts are in dispute); *McCune v. First Judicial Dist. of*

*Pa.*, 99 F. Supp. 2d 565, 567 (E.D. Pa. 2000) (enforcing settlement and denying post-agreement repudiation).

Accordingly, where Defendants have failed to perform their obligations under duly executed settlement agreements after receiving proper notice and opportunity to cure, this Court retains inherent and ancillary authority to enforce the settlements, enter judgment for the unpaid balances pursuant to the confession-of-judgment clauses, and award reasonable attorneys' fees and costs incurred to secure compliance.

## II.    REQUESTED RELIEF

For the reasons set forth above, Plaintiffs respectfully request that this Honorable Court enforce the March 2025 settlement agreements and enter judgement in accordance with the terms set forth below:

1. Enforce the March 2025 settlement agreements between Plaintiffs Maxwell and Pendel, and Defendants Power Innovations, Kimberly Kelly, and Scott Kelly;

2. Enter judgement against Defendants, jointly and severally, for the full unpaid settlement amounts in accordance with the agreements' confession-of-judgement provisions;

3. Award Plaintiffs reasonable attorneys' fees and costs incurred in enforcing the settlements; and

4. Grant such further relief as this Court deems just and proper.

                    Respectfully submitted,

                    **J.P. WARD & ASSOCIATES, LLC**

Date: October 29, 2025        By: _____
                                          Justin M. Bahorich (Pa. I.D. 329207)
                                          The Rubicon Building
                                          201 South Highland Avenue
                                          Suite 201
                                          Pittsburgh, PA 15206
                                          jbahorich@jpward.com

                                          *Counsel for Plaintiffs*